**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| LEZLEY B. ANDERSON, Ed. D.,<br><br>Plaintiff,<br><br>v.<br><br>SUMTER COUNTY SCHOOL DISTRICT and SUPERINTENDENT TORRANCE CHOATES, in his Individual Capacity,<br><br>Defendants. | Civil Action No.:<br><br>1:19-cv-00042<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW Plaintiff Lezley B. Anderson, Ed. D., and brings this action pursuant to the False Claims Act, 31 U.S.C. § 3721, *et seq.* (hereinafter, "False Claims Act")[1], O.C.G.A. § 45-1-4 (hereinafter, "Georgia Whistleblower Statute"), and the Civil Rights Act of 1871, 42 U.S.C. § 1983 (hereinafter, "Section 1983), as follows:

**JURISDICTION AND VENUE**

1.

This Court has original jurisdiction over the subject matter of this civil action arising under the Constitution and laws of the United States pursuant to 28 U.S.C. § 1331.

2.

This Court should exercise its supplemental jurisdiction over the subject matter of this civil litigation arising under the Constitution and laws of the State of Georgia pursuant to 28 U.S.C. § 1367 as said claims are so related to claims in this action within the Court's original jurisdiction

[1] Plaintiff has elected to pursue a retaliation claim under the False Claims Act but does not intend to prosecute a *qui tam* cause of action under the same.

that they form part of the same case and controversy under Article III of the United States Constitution and 31 U.S.C. § 3732.

3.

Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Plaintiff was employed and the events underlying this action occurred in Sumter County, Georgia, which is located in this judicial district and division.

**PARTIES**

4.

Plaintiff Lezley B. Anderson, Ed. D. is a citizen of the United States and a resident of the State of Georgia. At all times relevant to this suit, she was employed with Defendant Sumter County School District, located at 100 Learning Lane, Americus, Sumter County, Georgia 31719.

5.

Defendant Sumter County School District (hereinafter, "Defendant Sumter Schools") is a local school district created under the Constitution and laws of the State of Georgia. Defendant Sumter Schools receives financial payments and/or grants of assistance from both the State of Georgia and the United States. Defendant Sumter Schools has the capacity to sue and be sued by special acts of the legislature of the State of Georgia.

6.

Defendant Sumter School may be served with process through its chief executive officer, pursuant to O.C.G.A. § 9-11-4(e).

7.

Defendant Superintendent Torrance Choates, in his Individual Capacity, (hereinafter, "Defendant Choates") is a citizen of the United States and a resident of the State of Georgia. At all times relevant to this suit, Defendant Choates was employed with Defendant Sumter Schools.

8.

Defendant Choates may be served with process at his domicile located at 153 Hillcrest Grange Drive, Americus, Sumter County, Georgia 31719 or his place of employment located at 100 Learning Lane, Americus, Sumter County, Georgia 31719.

**STATEMENT OF FACTS**

9.

Plaintiff Lezley B. Anderson, Ed. D. (hereinafter, "Plaintiff" or "Dr. Anderson") served as the Principal of the Sumter County Primary School from 2016 through 2018.

10.

Sumter County Primary School is a school operated by Defendant Sumter Schools, serving Pre-K through First Grade Students.

11.

Prior to serving as Principal of Sumter County Primary School, Dr. Anderson served as a principal at other schools operated by Defendant Sumter Schools since 2013. Dr. Anderson was named Principal of the Primary School when her previous school was reorganized and merged with the Primary School.

12.

Prior to her role as a principal, Dr. Anderson served as both an assistant principal and teacher with Defendant Sumter Schools.

13.

Dr. Anderson was recognized for her performance by Defendant Sumter Schools on numerous occasions due, in part, to her students' standardized test scores.

14.

Under Dr. Anderson's leadership as Principal, the Primary School was named a model school for its curriculum implementation.

15.

Under Dr. Anderson's leadership as Principal, one of her prior schools attained its highest test scores prior to her arrival and within the prior four years and moved from a climate rating of 1 before her arrival to a climate rating of 4.

16.

Under Dr. Anderson's leadership as Principal, one of her prior schools was improved to the point that its designation as a "Focus School" was removed.

17.

At all times relevant to this civil action, Dr. Anderson's performance was exemplary.

18.

In or about October 2016, Defendant Choates was named as the Superintendent of Sumter County Schools. As Superintendent, Defendant Choates has the authority to make day-to-day decisions in the management of Defendant Sumter Schools, including, but not limited to, the provision of educational programs and matters of spending, employment, and facilities.

Discriminatory Practices

19.

In or about February 2017, during a face-to-face meeting, Defendant Choates told Dr. Anderson that she was spoiled and that she did not know what it is like to struggle because she is not black.

20.

During a subsequent telephone conversation, Defendant Choates told Dr. Anderson that her school was "too white." Dr. Anderson understood Defendant Choates' comment to mean that he believed that too many of Dr. Anderson's faculty and administration were white. During this conversation, Defendant Choates acknowledged that it would not be permissible to direct Dr. Anderson to only hire black teachers, but he instructed her to keep these factors in mind.

21.

When the position of assistant principal became open, Defendant Choates reminded Dr. Anderson that she must fill the position with a black male. Dr. Anderson responded that she would not know an applicant's race from their application. Defendant Choates suggested that she should obtain this information by calling applicants in for an interview. This directive was later echoed by the Director of Human Resources.

22.

Dr. Anderson informed at least two members of the School Board of Defendant Choates' directive to restrict her hiring decisions based on race and sex.

23.

Subsequently, Dr. Anderson and her hiring committee considered applications for assistant principal on a race-neutral basis, using a rubric. Dr. Anderson and the committee ultimately defied

Defendant Choates' directive and recommended a candidate from India who was qualified and already an employee of Defendant Sumter Schools. When Defendant Choates received the recommendation, he discouraged Dr. Anderson from making this decision asking, in part, if she could "even understand what they say?" Dr. Anderson ultimately hired this candidate over Defendant Choates' discouragement.

24.

In or about April 2018, Dr. Anderson attempted to hire a teacher from India who was the most-qualified applicant for the position and exceeded the position requirements. On April 30, 2018, Defendant Choates rejected Dr. Anderson's suggested candidate.

25.

During a meeting on May 31, 2018, Defendant Choates discussed the fact that "internationals" were unable to handle discipline due to language barriers, as well as children not being able to understand their accents.

26.

As further alleged herein, *infra*, Defendant Choates ultimately forced Dr. Anderson to resign, and Dr. Anderson was replaced with a black female. In light of Defendant Choates' prior comments concerning race, Dr. Anderson believes that she was forced to resign for discriminatory reasons, based on her race.

<u>Fraudulent Reports of Enrollment and Program Services</u>

27.

The amount of funding that a Georgia school system receives from the State Government is determined by a "Quality Basic Education Formula" (hereinafter, "QBE"). *See* O.C.G.A. § 20-2-161. The appropriation of State grants necessarily depends on the number of full-time equivalent

(hereinafter, "FTE") students that a school system reports are enrolled to the Georgia Department of Education, with adjustments made for the type of education program and certain demographics of the FTE students (e.g., kindergarten, high school, early intervention programs, programs for persons with disabilities, etc.).

28.

Similarly, the allocation of Title I funds to local school districts is calculated based, in part, on enrollment and attendance data that the local school district reports to the Federal Government.

29.

All of Defendant Sumter Schools' schools receive funding and grants of assistance from the State of Georgia and Title I funding and grants of assistance from the Federal Government.

30.

On or about September 26, 2017, Defendant Choates directed all principals, including Dr. Anderson, to have parents with children who had absences of two or more consecutive days to retroactively withdraw their children's enrollment in their respective schools and re-enroll their students upon their return to school.

31.

By withdrawing said students during their absence and re-enrolling said students upon their return, Defendants attempted to avoid having the students' absences cause a reduction in State and Federal funding.

32.

Dr. Anderson refused to comply with Defendant Choates' directives to change attendance records and, upon her return to the Primary School, she informed her staff that her school would not comply with this directive because it was illegal. Dr. Anderson also told her staff that, if a

supervisor from the district contacted anyone about this issue, they should let Dr. Anderson know immediately. Changing attendance records in this manner would affect the School Climate Star Rating that is a product of Georgia law. *See* O.C.G.A. § 20-14-33.

33.

On or around October 5, 2017, Dr. Anderson reported Defendant Choates' directives and Dr. Anderson's opposition to one member of Defendant Sumter Schools' Board of Education.

34.

Shortly thereafter, on October 11, 2017, Defendant Choates directed his subordinate-administrators and counselors, including Dr. Anderson, to instead change the attendance records for students with said consecutive excused absences to the "OTH" exemption code. This directive was also described to school administrators in an email on October 12, 2017.

35.

Using said exemption code, especially for absences during the ten-day window prior to the FTE count, would cause a student to be shown as present on state records and the child would be counted and funded as if the child had been physically present instead of absent.

36.

In November 2017, Dr. Anderson discovered that Defendant Choates, through a designee, called a working meeting of each school's data clerk within the district, whereby the data clerks were directed to change student attendance records using said exemption code.

37.

Around that time, in the course of her regular attendance support team duties, the Counselor of the Primary School ran a report to show students with excessive absences based on school attendance protocol. When she did, the Counselor noticed that there were students who suddenly

had fewer absences than when truancy paperwork had been filed and, therefore, court records were no longer accurate.

38.

When Dr. Anderson checked one of the affected students' attendance records, she found that the record only reflected fourteen absences, despite the student being absent for a total of twenty-two days. Eight of these absences were not counted as such because of the aforementioned exemption code. A true and correct redacted copy of the Student Period Attendance Detail is attached hereto and marked as "Exhibit A."

39.

When Dr. Anderson learned that data clerks had altered attendance records, Dr. Anderson called the Student Information Specialist and explained that it was not proper or legal to use this exemption code, as had been directed by Defendant Choates. The Student Information Specialist told Dr. Anderson that Defendant Choates directed his subordinates to use this code to improve Defendant Sumter Schools' attendance numbers on the reports it submits to the State and Federal Government. Specifically, the Student Information Specialist further stated that absences coded with the "OTH" exemption code would not show up on State-level reports.

40.

As it pertained to the student in Paragraph 38, *supra*, the State reports would not accurately reflect that the student did not receive special education services during the eight absences that had been coded with the aforementioned exemption. This is important because there may be certain implications under State and Federal law if a student has ten absences. For example, this may trigger a requirement that a school provide additional special education services to that student under Federal law. *See, e.g.*, 34 C.F.R. § 300.530.

41.

The amount of funding and grants of assistance that a school system receives from the Governments of both the United States and the State of Georgia is necessarily tied directly to the attendance numbers that the school system reports to the Governments of the United States and the State of Georgia.

42.

On the same day, Deputy Superintendent Stephanie Johnson of the Georgia Department of Education (hereinafter, “Georgia DOE”) happened to be visiting the school district. During the Deputy Superintendent’s visit, Dr. Anderson expressed her concerns about Defendant Choates’ directives involving attendance, as well as his use of Title I funds, as described *infra*.

43.

In or around November 17, 2017, Dr. Anderson’s husband, Wiley Anderson (hereinafter, “Mr. Anderson”) contacted the Georgia DOE, with the knowledge and direction of Dr. Anderson, to file a complaint about Defendant Choates’ directives involving attendance. Mr. Anderson ultimately communicated with the Program Manager of Academic Auditing in the Georgia Governor’s Office of Student Achievement, who provided Mr. Anderson with a written complaint form.

44.

On November 27, 2017, Defendant Sumter Schools’ Student Information Specialist sent an email to all principals to inform them that the district could no longer use the exempt attendance code; rather, all absences must be “Unexcused” or “Excused.” The Student Information Specialist also explained that the exempt code is not approved of by the Georgia DOE. Based on this email,

Dr. Anderson did not request that Mr. Anderson file the Governor's Office of Student Achievement written complaint that he had already completed.

45.

Upon information and belief, Defendant Sumter Schools was contacted by representatives of the Georgia DOE and/or Office of the Governor, leading Defendant Choates to know or suspect that Dr. Anderson had made a report due to her prior outspoken objections.

46.

According to Georgia law, a local school system must report its initial FTE count after October 1st and before November 17th of each calendar year. *See* O.C.G.A. § 20-2-160. The initial FTE count is used, along with the prior year's second FTE count, to determine the amount of State and Federal funds to be appropriated to finance educational programs for the ensuing fiscal year. *See id*.

47.

As a result of Defendant Sumter Schools' inaccurate FTE counts due to fraudulent attendance policies in effect during the time that its initial FTE count was due, Defendant Sumter Schools submitted a fraudulent FTE report to the State of Georgia and United States for the purposes of obtaining additional State and Federal funding.

48.

According to the Georgia Quality Basic Education Formula, the amount of funding and grants that schools receive is increased based on the students who are enrolled in an early intervention program (hereinafter, "EIP"). *See* O.C.G.A. 20-2-161.

49.

In and around October 2017, Defendant Choates, and other representatives of Defendant Sumter Schools, directed all principals, including Dr. Anderson, to increase the number of students who were enrolled in EIP. The express purpose of which was to “[m]aximize [their] funding.”

50.

The students that Defendants directed its principals, including Dr. Anderson, to include in EIP classes did not truly need said services. Moreover, some students who were reported as receiving EIP services in Defendants’ FTE counts were not truly receiving said services.

51.

As a result, Defendants submitted fraudulent data in its FTE counts to the State and Federal Governments in October or November 2017, and again in March 2018.

52.

According to the Georgia Quality Basic Education Formula, the amount of funding and grants that schools receive is increased based on the students who are enrolled in a program for persons with different categories of disability. *See* O.C.G.A. 20-2-161.

53.

As a part of its reported FTE counts, Defendants reported that it was providing special education supplemental speech services to students at a local private school; however, said students were not actually receiving any speech services.

54.

Dr. Anderson became aware of at least one occasion, when a student at another school had been on home confinement beginning in October 2017 through February 2018, Defendant Choates directed the Special Education Coordinator to retroactively change records to reflect that the

student had been receiving services listed in his Individualized Education Plan (hereinafter, "IEP") that, in reality, the student had not received. This change was made in an attempt to ensure that State and Federal funds and grants for special education services were secured for providing this student with special education services.

55.

In or around October 2017, Dr. Anderson learned that PEECH, a provider of special education services for Pre-K students, had made changes to several of Dr. Anderson's students' records without her knowledge. Said changes included revising the services allegedly provided and altering IEP meeting minutes to reflect teachers being in attendance for the meeting who actually had not. Dr. Anderson reported her discovery to the Associate Superintendent.

56.

As a recipient of funds and grants of assistance for special education from both the State and Federal Governments, Defendants intentionally changed students' records, including IEPs and attendance records, to reflect that special education services had been provided that the students did not actually receive in an attempt to increase the amount of such funding from the State and Federal Governments.

Misuse of Funds

57.

In a meeting in early 2017, Defendant Choates expressed his interest in increasing the funds in his "Superintendent Account." Defendant Choates suggested that each school have a fundraiser in which the schools would keep 60% of the funds raised and 40% would be deposited into the Superintendent Account. When Defendant Choates solicited feedback during the meeting, Dr.

Anderson stated that she did not believe that using funds raised by students on anything other than students was ethical or legal under the Georgia Code of Ethics for Educators.[2]

58.

Defendant Choates ultimately asked each principal to write a $500.00 check, in lieu of holding a fundraiser, due to multiple principals voicing their objection to his initial plan. Because that money would have necessarily been that raised at school by students, Dr. Anderson still refused to write a check due to her ethical and legal concerns. Shortly thereafter, Defendant Choates sent an email confirming that the money going toward the Superintendent Account could not have been generated by students.

59.

However, on several other occasions, Defendant Choates requested that each school provide contributions toward his Superintendent Account, gifts for members of the Board of Education, and sponsorships of a local Chamber of Commerce dinner.

60.

Funds and grants of assistance received by the Federal Government under Title I are intended to supplement, not supplant, funds available from State and local sources for education of students participating in Title I, Part A programs.

61.

In 2016, no portion of the Primary School’s initial allocation of Title I funds were used for the purposes of salary or benefits – rather, carryover funds were eventually used based on the Primary School’s Comprehensive Needs Assessment and School Improvement Plan as required by Title I policy. Moreover, the FY17 allocation available to the school for school-based

[2] *See* Ga. Comp. R. & Regs. 505-6-.01.

discretionary spending was $183,855. However, in October 2017, Dr. Anderson learned that $646,885 of the FY18 allocation would be used specifically on employee salary and benefits – even though no positions were added to reduce class sizes and these same positions that were funded with Title I funds in FY18 were funded by State and/or local funds in FY17. As a result, only $808 of Title I funds were available to the Primary School for school-based discretionary spending in FY18.

62.

With the knowledge and direction of Dr. Anderson, Mr. Anderson contacted the Georgia DOE's Title I, Part A Program Manager in December 2017 to inquire into and complain of Defendants' use of Title I funds. Dr. Anderson was contacted and complied as a witness in the subsequent Georgia DOE investigation.

63.

Defendants also sought to save additional money by not providing substitutes for paraprofessionals during their absences. However, failing to provide a substitute for some paraprofessionals results in certain special education classrooms not being in compliance with State and Federal requirements. As a result, Dr. Anderson refused to comply with Defendants' directive.

<u>Retaliation</u>

64.

In Georgia, principals and other administrators are evaluated using the Leader Keys Effectiveness System (hereinafter, "LKES"). Defendant Choates was the individual who evaluated Dr. Anderson.

65.

As a result of Defendant Choates animus against toward Dr. Anderson, and despite the exceptional performance of Dr. Anderson's school, Defendant Choates provided Dr. Anderson with a poor end-of-year LKES Summative Assessment in April 2017. Defendant Choates' reasons for the poor evaluations were both inaccurate and pretext for his true motivations.

66.

Defendant Choates provided such a poor evaluation with the intent of placing Dr. Anderson on a Professional Learning Plan (hereinafter, "PLP"), which he did on October 4, 2017. Defendant Choates intended to make the PLP difficult to complete so it could be used as the basis for Dr. Anderson's termination. Indeed, Dr. Anderson was told by the Associate Superintendent that Defendant Choates had "charged" him with making the PLP difficult to complete.

67.

Regardless, Dr. Anderson satisfactorily completed all requirements of the PLP well in advance of the deadlines.

68.

On March 7, 2018, Dr. Anderson spoke with the Director of the Ethics Division of the Georgia Professional Standards Commission, a commission of the State that regulates professional employees in public schools. Dr. Anderson informed the Director of Defendant Choates' requests for funds for his Superintendent Account. Dr. Anderson also informed the Director that Defendant Choates charged the Associate Superintendent with making the PLP difficult to complete and that Defendant Choates had refused to acknowledge that Dr. Anderson had actually completed the requirements of her PLP.

69.

On March 9, 2018, Defendant Choates met with Dr. Anderson and told her that she would not be offered a contract for the next school year. Defendant Choates told Dr. Anderson that he would provide her with poor scores on her end-of-year LKES Summative Assessment if she did not resign.

70.

Defendant Choates had previously criticized Dr. Anderson in her LKES evaluations and otherwise for issues related to those alleged herein. For example, Defendant Choates noted that Dr. Anderson's attendance goals were not being met, which was likely because Dr. Anderson refused to comply with Defendants' directives to falsify or change attendance records. With regard to Dr. Anderson's professionalism, Defendant Choates wrote:

> I still have concerns with you in this area. In the future, it is imperative that you work with your superintendent and that you build a trusting relationship. Also, there is a strong need for you to think of "TEAM" instead of one's own independent needs. You have shown that you often have only wanted what was best for your needs instead of looking at the big picture.

Moreover, when discussing the separation by email, Defendant Choates told Dr. Anderson, in part, that:

> I have attempted to make things work for almost the past 2 years and have come to the conclusion that our views are nowhere in alignment with one another… My decision is final. There is nothing personal but I strongly disagree with many of the actions you have taken in the past 2 years.

71.

Defendant Choates was aware of many, if not all, of the reports and complaints that Dr. Anderson made, and caused to have made, internally and to government agencies, as well as her opposition to illegal activities. Upon information and belief, Defendant Choates' decision to either

terminate Dr. Anderson or have her resign was a direct result of her reports, complaints, and opposition.

72.

At that time, Defendant Choates informed Dr. Anderson that he would remove any reference to remediation from her State certification and provide her with a good evaluation at the end of May 2018 if she decided to resign instead of not having her contract renewed.

73.

Because of the poor evaluation scores and remediation that Defendant Choates placed on Dr. Anderson's State certification, a subsequent poor evaluation would have automatically resulted in the loss of Dr. Anderson's required State certification. For this reason, Dr. Anderson felt as though she had no choice but to submit her notice of resignation to the Board of Education by the deadline provided by Defendant Choates, March 19, 2018.

74.

On April 13, 2018, Dr. Anderson was informed that the Board of Education accepted her resignation to be effective on June 30, 2018.

75.

Dr. Anderson was separated from her employment with Defendant Sumter Schools on June 30, 2018.

## Administrative Background

76.

On or about December 7, 2018, Dr. Anderson submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that Defendant Sumter Schools subjected her to discrimination based on her race and retaliation due to her

opposition of discriminatory practices based on race, national origin, and sex, all in violation of the Georgia Fair Employment Act and Title VII of the Civil Rights Act. (EEOC Charge No. 410-2019-01779.)

77.

In her Charge of Discrimination, Dr. Anderson explicitly referenced her intent to bring the instant action.

78.

At this time, Dr. Anderson's Charge of Discrimination remains pending before the EEOC, and she has not exhausted her administrative remedies.

79.

Once her administrative remedies have been exhausted before the EEOC, Dr. Anderson intends to amend this Complaint to pursue civil remedies available to her under the Georgia Fair Employment Act and Title VII of the Civil Rights Act in this action.

**COUNT I:**
**RETALIATION**
**IN VIOLATION OF THE FALSE CLAIMS ACT**
**(Defendant Sumter Schools)**

80.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 79, as if the same were set forth herein.

81.

Defendants engaged in activities that violated the False Claims Act, 31 U.S.C. § 3729(a)(1).

82.

As alleged herein, Defendants violated the False Claims Act by knowingly presenting, and causing to be presented, false and fraudulent claims by submitting requests for payment of funds and grant assistance to the Government of the United States that were based on false and fraudulent student enrollment and attendance data and program enrollment for students with disabilities. *See* 31 U.S.C. § 3729(a)(1)(A).

83.

As alleged herein, Defendants further violated the False Claims Act by knowingly making, using, and causing to be made and used, false records that were based on false and fraudulent student enrollment and attendance data and program enrollment for students with disabilities, which were material to Defendants' false and fraudulent claims to the Government of the United States. *See* 31 U.S.C. § 3729(a)(1)(B).

84.

As alleged herein, Defendants further violated the False Claims Act by conspiring to commit violations of the False Claims Act. *See* 31 U.S.C. § 3729(a)(1)(C).

85.

Under the False Claims Act, an employee who is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against in the terms and conditions of her employment because of lawful acts she has done to stop violations of the False Claims Act is entitled to all necessary relief to make her whole. *See* 31 U.S.C. § 3730(h).

86.

"To establish a prima facie case of retaliation, a plaintiff must prove that (1) the employer is covered by the act at issue, (2) the employee engaged in protected activity, (3) the employee

suffered adverse action, and (4) there is an inference of causation between the protected activity and the adverse action." *U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F. Supp. 2d 1329, 1341 (M.D. Ga. 2011) (citing *Mann v. Olsten Certified Healthcare Corp.*, 49 F.Supp.2d 1307, 1317 (M.D.Ala.1999)); *see also Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 934 (11th Cir.1995)).

87.

Defendants Sumter Schools is properly considered an employer under the False Claims Act.

88.

As alleged herein, Dr. Anderson was engaged in protected activities under the False Claims Act. Specifically, she opposed Defendants' unlawful actions, as described above, made internal complaints regarding Defendants' conduct in violation of Federal law, and she reported, and caused to be reported, this conduct to the Georgia Professional Standards Commission, Georgia Department of Education, and the Office of the Governor of Georgia.

89.

As alleged herein, Dr. Anderson suffered adverse employment actions in that she was placed on a Professional Learning Plan, threatened with termination and/or contract non-renewal, and ultimately forced to submit her resignation as a direct result of her involvement in protected activities.

90.

As alleged herein, Defendants' stated reasons for the adverse actions are inaccurate, incorrect, and pretextual, and there is indeed an inference that Dr. Anderson's participation in protected activities was the true cause of the adverse actions that she experienced.

91.

Defendant Sumter Schools is vicariously liable for the acts and omissions of Defendant Choates alleged herein.

92.

Dr. Anderson has been injured by Defendant Sumter Schools' retaliatory and discriminatory actions, and is entitled to all relief allowed under the False Claims Act, including reinstatement, two (2) times the amount of back pay, interest on back pay, compensation for special damages sustained as a result of the discrimination, and litigation costs and attorney's fees, in an amount to be proven at trial.

**COUNT II:**
**RETALIATION**
**IN VIOLATION OF O.C.G.A. § 45-1-4**
**(Defendant Sumter Schools)**

93.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 79, as if the same were set forth herein.

94.

Pursuant to the Georgia Whistleblower Act, "[n]o public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity." O.C.G.A. § 45-1-4(d)(2).

95.

Under the Georgia Whistleblower Act, retaliation "refers to the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment

for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency." O.C.G.A. § 45-1-4(a)(5).

96.

As alleged herein, Defendants committed fraud and abuse by knowingly presenting, and causing to be presented, false and fraudulent claims by submitting requests for payments of funds and grants of assistance to the Government of the State of Georgia that were based on false and fraudulent student enrollment and attendance data and program enrollment for students with disabilities.

97.

As alleged herein, Defendants committed fraud and abuse by knowingly making, using, and causing to be made and used, false records that were based on false and fraudulent student enrollment and attendance data and program enrollment for students with disabilities, which were material to Defendants' false and fraudulent claims to the Government of the State of Georgia.

98.

The Georgia Whistleblower Act prohibits public employers from preventing a public employee from disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government authority. Specifically, the Act prohibits retaliation for disclosing a violation or objecting or refusing to participate in a violation. O.C.G.A. § 45-1-4(d).

99.

The Act authorizes an employee who has been the object of retaliation in violation of said statute to initiate civil action. O.C.G.A. § 45-1-4(e)(1).

100.

Defendant Sumter Schools is a public employer, and Dr. Anderson was a public employee for the purposes of the Georgia Whistleblower Act.

101.

As alleged herein, Dr. Anderson objected and refused to participate in activities that were in violation of the laws of the State of Georgia and the United States.

102.

As alleged herein, Dr. Anderson disclosed said violations and noncompliance of law to her supervisors.

103.

As alleged herein, Dr. Anderson disclosed, and caused to be disclosed, said violations and noncompliance of law to several governmental agencies, including the Georgia Department of Education, Office of the Governor of Georgia, and the Georgia Professional Standards Commission.

104.

As alleged herein, Dr. Anderson suffered adverse employment actions in that she was placed on a Professional Learning Plan, threatened with termination and/or contract non-renewal, and ultimately forced to submit her resignation as a direct result of her objection to and disclosure of violations of and noncompliance with Georgia law.

105.

As alleged herein, Defendants' stated reasons for the adverse actions are inaccurate, incorrect, and pretextual, and there is, at least, an inference that Dr. Anderson's opposition to and

disclosure of violations of and noncompliance with Georgia law were the true cause of the adverse actions that she experienced.

106.

Defendant Sumter Schools is vicariously liable for the acts and omissions of Defendant Choates alleged herein.

107.

Dr. Anderson has been injured by Defendant Sumter Schools' retaliatory and discriminatory actions, and is entitled to all relief allowed under the Georgia Whistleblower Act, including an injunction restraining Defendants' continued violation of said statute, reinstatement to the same position held before the retaliation or to an equivalent position, reinstatement of full fringe benefit and seniority rights, compensation for lost wages, benefits, and other remuneration, any other compensatory damages allowable at law, and an award of attorney's fees, court costs, and expenses of litigation, in an amount to be proven at trial.

**COUNT III:**
**RACIAL DISCRIMINATION**
**IN VIOLATION OF SECTION 1983**
**(Defendants Sumter Schools & Choates)**

108.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 79, as if the same were set forth herein.

109.

Pursuant to the Fourteenth Amendment of the Constitution of the United States, Plaintiff had the right to equal protection of law.

110.

Defendants Sumter Schools and Choates were state actors, acting under the color of state law.

111.

As alleged herein, Defendants have each violated Dr. Anderson's right to equal protection of law by subjecting her to treatment that was disparate from her counterparts due to her race. Specifically, Dr. Anderson was forced to resign from her position due to her race.

112.

Defendant Choates made his racial bias and animus known to Dr. Anderson on several prior occasions, creating the inference that his replacement of Dr. Anderson with an individual of Defendant Choates preferred race was intentional discrimination based on race.

113.

Defendant Choates is not entitled to the protections of immunity because, as alleged herein, Defendant Choates acted willfully, wantonly, maliciously, and with the intent to harm Dr. Anderson.

114.

Defendant Sumter Schools is vicariously liable for the acts and omissions of Defendant Choates alleged herein.

115.

As a direct and proximate result of Defendants' wrongful acts and omissions, Dr. Anderson has sustained loss of earnings and earning capacity, loss of fringe and pension benefits, suffered mental anguish, physical and emotional distress, humiliation and embarrassment, loss of

professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice, in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lezley B. Anderson, Ed. D. respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant Sumter County School District and Defendant Superintendent Torrance Choates, in his Individual Capacity, and said Defendants be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff Lezley B. Anderson, Ed. D., and against Defendant Sumter County School District, on Count I for all relief allowable under the False Claims Act, 31 U.S.C. § 3721, *et seq.*;

4) That judgment be awarded for and in favor of Plaintiff Lezley B. Anderson, Ed. D., and against Defendant Sumter County School District, on Count II for all relief allowable under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4;

5) That judgment be awarded for and in favor of Plaintiff Lezley B. Anderson, Ed. D., and against Defendant Sumter County School District and Defendant Superintendent Torrance Choates, in his Individual Capacity, on Count III for all relief allowable under the Civil Rights Act of 1871, 42 U.S.C. § 1983;

6) For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 8th day of March, 2019.

KENNETH E. BARTON III
Georgia Bar No. 301171
BRUCE D. DUBBERLY IV
Georgia Bar No. 809675

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
bdd@cooperbarton.com

MASON G. BRYAN
Georgia Bar No. 172044

Law Office of Mason G. Bryan
P.O. Box 27566
Macon, Georgia 31210
mason@mbryanlaw.com

*Attorneys for Plaintiff*